**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM GROSS,

      Plaintiff-Appellant,

v.

DEPUTY QUENT PIRTLE and DONA
ANA COUNTY,

      Defendants-Appellees.

No. 01-2337
(D. New Mexico)
(D.Ct. No. 99-802 RLP/LFG)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **PORFILIO**, Circuit Judges, and **KANE**, District Judge.[**]

      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    [**]The Honorable John L. Kane, United States Senior Judge for the District of Colorado, sitting by designation.

This is the second appeal in this case. William Gross challenges the district court's grant of summary judgment in favor of Defendants Deputy Quent Pirtle and Dona Ana County (the County). With regard to his appeal of the dismissal of his Fourteenth Amendment due process claim, Defendants have filed a motion to dismiss. For the reasons stated herein, we grant Defendants' motion. As to the remainder of this appeal, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**Factual Background**

On Friday, November 13, 1998, Gross was stopped at a sobriety checkpoint in Las Cruces, New Mexico, at approximately 10:45 p.m. Because he admitted to consuming alcohol earlier that evening, he was sent to a secondary location for further inquiry. Although it was determined that Gross was not impaired, one officer, Officer Ordonez, noticed a dealer's license plate on Gross' vehicle. Officer Ordonez asked Deputy Pirtle to investigate whether Gross' use of the plate was lawful.

With a flashlight, Deputy Pirtle approached Gross in his vehicle. When Deputy Pirtle questioned Gross concerning the plate, Gross informed Pirtle he was road testing the vehicle. What happened next is in dispute. Deputy Pirtle alleges he noticed the vehicle's dashboard was littered with receipts. He states that when he asked about the receipts, Gross responded that the vehicle was a

parts vehicle. Based on his belief that the vehicle was being improperly used as a parts vehicle, Deputy Pirtle attempted to issue Gross a citation. Gross, however, denies informing Pirtle the vehicle was a parts vehicle. In spite of the late hour, Gross contends he was road testing the vehicle, which he claims is a legitimate reason for use of dealer plates.

Both parties agree Gross became upset when Pirtle informed him he would be receiving a citation.[1] Gross asked Deputy Pirtle to read a certain statute, claiming the statute demonstrated his use of the dealer plate was lawful. Pirtle alleges he read the statute but found it inapplicable. Deputy Pirtle then wrote out a citation, asked Gross to sign it and informed Gross that his signature was not an admission of guilt.[2] Gross eventually initialed the ticket and wrote "Under Protest" on the ticket. Pirtle alleges that because Gross' signature did not match that on his driver's license, he completed a new citation form and asked Gross to sign it. Gross refused to sign it and demanded an immediate appearance before a magistrate judge. Pirtle arrested Gross.

### Procedural Background

Gross filed a 28 U.S.C. § 1983 action against Deputy Pirtle and the County

---

[1] At his deposition, Gross testified that prior to the issuance of the citation, he warned Pirtle that "he was about to make some big mistakes." (App. Vol. III at 178.)

[2] Pirtle cited Gross for "Improper Use of Evidences of Registration" under N.M. STAT. ANN. § 66-8-2.

in the United States District Court of New Mexico.[3]  He raised four claims against Deputy Pirtle: (1) unreasonable detention and unlawful arrest in violation of the Fourth Amendment (Count I); (2) excessive force in violation of the Fourth Amendment (Count II);[4] (3) deprivation of due process under the Fourteenth Amendment (Count III); and (4) false imprisonment in violation of New Mexico law (Count IV).  He also alleged the County was vicariously liable for Pirtle's actions under the New Mexico Tort Claims Act (Count V).

Subsequently, Defendants filed a motion for summary judgment based on qualified immunity.  Discovery was stayed pending disposition of the motion. The district court denied the motion as to Counts I (unlawful detention and arrest) and II (excessive force) and granted the motion as to Counts III (due process) and IV (false imprisonment).  Upon Defendants' motion to alter/amend judgment and Gross' response thereto, the court amended its prior order, concluding it improperly dismissed Count IV and ruling for the first time that the County was not entitled to summary judgment on Count V.  On April 25, 2000, finding "no just reason for delay of entry of judgment" pursuant to FED. R. CIV. P. 54(b), the court entered judgment in favor of Defendants on Count III.  (App. Vol. III at

---

[3] Both parties consented to proceed before a United State Magistrate Judge pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b).

[4] Gross alleged Deputy Pirtle kicked his right foot while arresting him, causing a bone spur.

277.)

Defendants appealed the denial of summary judgment on Counts I and II. We dismissed the appeal concerning Count I based on a lack of jurisdiction. *Gross v. Pirtle*, 245 F.3d 1151,1157-58 (10th Cir. 2001) (*Gross I*). However, as to Count II, we reversed the district court's denial of summary judgment, concluding Gross had failed to establish that Deputy Pirtle's actions constituted excessive force and therefore, Pirtle was entitled to qualified immunity as a matter of law. *Id.* at 1158.

On remand and after discovery, Defendants again moved for summary judgment based on qualified immunity. This time, the court granted the motion and dismissed the case in its entirety. This appeal followed.

## Discussion

Of Gross' original five claims, only two need be addressed. In the previous appeal, we dismissed Count II as a matter of law. *Gross I*, 245 F.3d 1158. The parties agree Counts IV and V are intertwined with Count I. Accordingly, our discussion is limited to Counts I and III, the latter of which we address first.

### A. *Count III - Deprivation of Due Process*

Gross attempts to appeal the district court's dismissal of Count III. Because the district court entered judgment on this count in April 2000, Defendants move for dismissal, arguing we lack jurisdiction because the appeal is

untimely. In response, Gross asserts he could not have appealed the dismissal of Count III in 2000 because it would have constituted a premature interlocutory appeal.

Generally, we have appellate jurisdiction only over final decisions. *See* 28 U.S.C. § 1291 (granting federal appellate courts jurisdiction to review "all final decisions of the district courts of the United States . . . .").[5] A final decision under § 1291 is "one that fully resolves all claims for relief," *see Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1541 (10th Cir. 1996); it terminates "all matters as to all parties and causes of action." *D&H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1444 (10th Cir. 1984) (en banc). Therefore, in a multiple claim/multiple party case, a district court order that adjudicates fewer than all the claims raised or rules as to fewer than all the parties is not a "final decision." *Harolds Stores, Inc.*, 82 F.3d at 1541. However, such order becomes "final," and more importantly appealable, if the district court certifies such order under FED. R. CIV. P. 54(b). *Id.*

Rule 54(b) provides:

> **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the*

---

[5] We have jurisdiction over interlocutory decisions under 28 U.S.C. § 1292 in limited circumstances, none of which are present here.

> *entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

FED. R. CIV. P. 54(b) (emphasis added). "[A] district court's *proper* certification of an order under Rule 54(b) ordinarily starts the clock running for purposes of filing a notice of appeal." *In Re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1107 (10th Cir. 2001) (emphasis added).

Here, the district court entered a Rule 54(b) judgment dismissing Count III with prejudice on April 25, 2000. Gross did not file a notice of appeal within the thirty days required by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. Therefore, dismissal of Gross' appeal concerning Count III is warranted unless the district court's Rule 54(b) certification was improper.

In order for a Rule 54(b) certification to be proper, the court must first determine the order to be certified is a final judgment; it then must find there is no just reason to delay appellate review of the order until the conclusion of the entire case. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980). *See also Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir.

-7-

2001); *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988). To be considered "final" under Rule 54(b), the order must be "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 466 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).

In determining whether to certify an order under Rule 54(b), the court should act as a "dispatcher" - weighing the historic federal policy disfavoring piecemeal appeals against the inequities that may result if a litigant is required to await resolution of the entire case before appealing. *Curtiss-Wright Corp.*, 466 U.S. at 8; *Oklahoma Turnpike Auth.*, 259 F.3d at 1241. Factors to be considered include "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.*, 466 U.S. at 8; *see also McKibben*, 840 F.2d at 1528. The former consideration, i.e. the separability requirement, must be satisfied in order for the judgment to be considered "final." *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002); *see also Oklahoma Turnpike Auth.*, 259 F.3d at 1243.

Although the Supreme Court and some of our cases have reviewed a district

court's Rule 54(b) certification for an abuse of discretion,[6] in *Oklahoma Turnpike Auth.*, 259 F.3d at 1242, we applied a two-tiered standard of review, reviewing de novo the district court's determination of finality and reviewing for an abuse of discretion its "no just reason for delay" determination. We need not resolve the matter because even under the stricter standard outlined in *Oklahoma Turnpike Auth.*, we conclude the district court's Rule 54(b) certification was proper.

In this case, the district court's April 25, 2000 order is a final order.[7] It granted summary judgment to Defendants on Count III; therefore, the order is "an ultimate disposition" of Count III. *Curtiss-Wright Corp.*, 466 U.S. at 7. Also, in Count III, Gross alleges Pirtle deprived him of his liberty when Pirtle arrested him rather than issuing him a citation and allowing him to leave. This allegation is separate and distinct from his Fourth Amendment claims, which allege Pirtle unlawfully detained and arrested him and used excessive force against him. Indeed, Gross concedes in his response to Defendants' motion to dismiss that "the facts and law surrounding [his Fourteenth Amendment due process claim (Count III) and his Fourth Amendment claims] are distinct."[8] Therefore, the district

---

[6] *See, e.g., Curtiss-Wright Corp.*, 446 U.S. at 10-13; *Sears, Roebuck & Co.*, 351 U.S. at 436-37; *In Re Integra Realty Res., Inc.*, 262 F.3d at 1108.

[7] The court did not make an express finding of finality but Rule 54(b) does not require one.

[8] *See* Plaintiff-Appellant's Response to Defendants-Appellees' Motion for Partial Dismissal of Appeal at 2.

court's order dismissing Count III met the finality requirement.

The court's order also satisfied the "no just reason for delay" requirement. As mandated by Rule 54(b), the court made an express determination that there was no just reason for delay. Although the court did not state its reasons for such determination and such articulation is desirable, the absence of such specific findings is not fatal.[9]  As discussed above, the law and facts surrounding Count III are separate and distinct from those pertaining to the remaining unadjudicated claims.  Additionally, at the time the district court certified the dismissal of Count III, Defendants had already filed a notice of appeal concerning the denial of qualified immunity on Counts I and II.[10]  Therefore, there "was no just reason" to

---

[9] Some circuits require the district court to provide reasons for its Rule 54(b) certification, *see, e.g., L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998)*; Justice v. Pendleton Place Apts.*, 40 F.3d 139, 141 (6th Cir. 1994) (citing *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61 (6th Cir. 1986)); *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1336 (4th Cir. 1993), while other circuits do not mandate such explanation but find it desirable, *see, e.g., Hayden v. McDonald*, 719 F.2d 266, 269 (8th Cir. 1983)*; Explosives Supply Co., Inc. v. Columbia Nitrogen Corp.*, 691 F.2d 486, 486 (11th Cir. 1982).  The Ninth Circuit, however, has held that the district court need not provide its reasons for certification. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991).  We have yet to address the issue.  However, in *Old Republic Ins. Co.*, 283 F.3d at 1225 n.5., we suggested that in the future, courts "clearly articulate their reasons and make careful statements based on the record supporting their determinations of 'finality' and 'no just reason for delay' so that we [can] review a Rule 54(b) order more intelligently and thus avoid jurisdictional remands."  That statement, however, came after the district court's Rule 54(b) certification in this case.  Although we prefer trial courts to articulate reasons for certification, in this case the omission does not render the certification invalid.

[10] Defendants filed their notice of appeal on April 11, 2000.

delay the appeal of the dismissal of Count III, as any appeal could have been consolidated with Defendants' appeal.

Based on the above, the district court's Rule 54(b) certification was proper. Consequently, Gross' failure to timely appeal the dismissal of Count III deprives us of jurisdiction. Defendants' motion to dismiss the appeal concerning Count III is granted.[11]

B.  *Count I - Unreasonable Detention and Unlawful Arrest*

In his complaint, Gross alleged Deputy Pirtle violated his Fourth Amendment rights by "detaining him without reasonable suspicion[] and arresting him without probable cause to believe he had committed the crime." (App. Vol. 1 at 8.) The district court eventually granted judgment in favor of Deputy Pirtle on Count I, concluding he was entitled to qualified immunity. On appeal, Gross alleges the district court erred by: (1) failing to follow the law of the case doctrine; (2) finding Deputy Pirtle believed that road testing the vehicle was illegal, a finding contrary to the record; and (3) ignoring Deputy Pirtle's own admission that he had no information Gross had violated any law when he approached Gross to question him regarding the dealer plate.

Before addressing the district court's qualified immunity determination,

---

[11] Contending Defendants' motion to dismiss is baseless, Gross requests sanctions against defense counsel. Because we grant the motion to dismiss, Gross' request is denied.

-11-

two problematic issues in this case need to be addressed. The first involves the *Gross I* panel's statements concerning the appropriate level of suspicion necessary for a continued detention and whether these statements constitute the law of the case. The second issue concerns the district judge's reliance on the level of suspicion necessary for an *initial* stop of a vehicle. We address each in turn.

(1) Gross I - Law of the Case

The *Gross I* panel stated the following as to Count I:

> In order for [Mr. Gross'] arrest to be lawful, Deputy Pirtle must have had *probable cause* to detain Mr. Gross for unlawful use of the dealer plate.

> After reviewing the record, we find that genuine issues of material fact remain concerning whether deputy Pirtle believed he had *probable cause* to detain Mr. Gross following the administration of the sobriety field test.

*Gross I*, 245 F.3d at 1157 (emphasis added). It is clear from this Court's precedents, however, that although probable cause is required for an *arrest*, it is not necessary for further *detention* of an individual after the purpose of an initial stop has concluded. An officer may detain a motorist "for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring [or] the initial detention has become a consensual encounter." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994) (citation omitted); *see also United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001); *United States v. Ozbirn*, 189

-12-

F.3d 1194, 1199 (10th Cir. 1999); *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994).

Gross argues *Gross I* constitutes the law of the case and therefore, the district court erred in not applying a probable cause standard[12] to determine whether his detention after the administration of the field sobriety test was lawful. We disagree.

"'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).[13] "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995).

The law of the case doctrine, however, is "only a rule of practice in the

---

[12]Apparently without regard to his complaint, which alleges the detention was <u>without reasonable suspicion</u>. *Infra* at 11.

[13] The law of the case doctrine (1) promotes finality of decisions and judicial economy by preventing re-argument of issues already decided, (2) discourages panel shopping at the appellate level, and (3) avoids the gradual undermining of public confidence in the judiciary. *McIlravy*, 204 F.3d at 1035.

courts and not a limit on their power." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000) (quotations omitted). There are three "exceptionally narrow" circumstances under which we will depart from the doctrine: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* (quotations omitted). *See also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (quotations omitted); *Kennedy v. Lubar*, 273 F.3d 1273, 1299 (10th Cir. 2001).[14]

The law of the case doctrine does not apply here because the *Gross I* probable cause statements were unnecessary to the decision and neither changed

---

[14] In addition to the law of the case doctrine, we recognize our policy against overruling the judgment of a prior panel absent en banc reconsideration or a superseding contrary decision by the United States Supreme Court. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."). However, such policy is not violated here because the *Gross I's* judgment was that it lacked jurisdiction; its probable cause statements were not the basis for its decision. Additionally, relying on this policy, *Gross I* did not overrule our precedents concerning the level of suspicion necessary for a continued detention.

the law in this circuit nor conformed to our precedents.[15]  Consequently, the law

of the case doctrine does not control our decision.

(2)  District Court's Reliance on Ozbirn

The district court, citing to page 1197 of the *Ozbirn* decision, stated the

following in its order granting qualified immunity:  "A traffic stop is reasonable

under the Fourth Amendment if the officer has either (1) probable cause to

believe a traffic violation has occurred; or (2) a reasonable articulable suspicion

that this particular motorist violated any one of the multitude of applicable traffic

and equipment regulations of the jurisdiction."  (App. Vol. 3 at 239.)  Relying on

this language, it applied a reasonable articulable suspicion standard to determine

whether Deputy Pirtle's actions were entitled to qualified immunity.

That particular language from *Ozbirn* referred to a traffic stop *at its

inception*.[16]  Gross does not challenge the initial stop, rather he complains of the

---

[15] Additionally, "[t]he law of the case doctrine presumes a hearing on the merits." *United States v. Hatter*, 532 U.S. 557, 566 (2001).  *See also Kennedy*, 273 F.3d at 1299. The *Gross I* panel did not decide Count I on the merits.  Rather, its statements regarding probable cause arose in its review of the record to determine whether it had jurisdiction under *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) (holding that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

[16] *Ozbirn* also addresses the level of suspicion necessary for a continued detention. 189 F.3d at 1199 ("[A]n officer [is permitted] to engage in further questioning unrelated to the initial stop if he has probable cause, the consent of the suspect, or, at a minimum, a reasonable suspicion of criminal activity.").

-15-

continued detention and questioning after he passed the field sobriety test. It is a distinction without a difference; the proper inquiry is whether Pirtle had an objectively reasonable and articulable suspicion of illegal activity or Gross' consent to the further detention.[17]

We now address whether the district court properly granted summary judgment to the Defendants.

### (3) Qualified Immunity

"We review a grant of summary judgment de novo, applying the same legal standard used by the district court under FED. R. CIV. P. 56(c)." *Rohrbaugh*, 53 F.3d at 1182. "Summary judgment should be granted if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)). "We consider the 'factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Id.* at 1182-83 (quoting *Blue Circle Cement, Inc. v. Bd. of County Comm'rs. of Rogers County, Okla.* , 27 F.3d 1499, 1503 (10th

---

[17] The continued detention was justified based on Pirtle's belief that New Mexico law prohibited the use of a dealer plate on a parts vehicle. The district court found that Deputy Pirtle believed road testing a vehicle with a dealer plate was unlawful and that belief justified continued detention. "We may affirm summary judgment 'on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result.'" *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) (quoting *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 528 (10th Cir. 1994)).

Cir.1994)).

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Co.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Our inquiry must be conducted in this order; in other words, we must first address whether the alleged facts demonstrate that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity. *Id.*

Here, we find Deputy Pirtle is entitled to qualified immunity because Gross has not demonstrated that Pirtle's actions violated a constitutional right, to wit, the Fourth Amendment. Under the Fourth Amendment, after the initial justification for a stop has legally concluded, further questioning or detention unrelated to the initial stop is only permitted if either (1) the officer has an

-17-

objectively reasonable and articulable suspicion that the driver is engaged in illegal activity or (2) the driver voluntarily consents to further questioning. *Zubia-Melendez*, 263 F.3d at 1161; *Ozbirn*, 189 F.3d at 1199; *Sandoval*, 29 F.3d at 540. Whether further questioning and detention are supported by an "objectively reasonable and articulable suspicion that the driver is engaged in illegal activity" is determined by a review of the totality of the circumstances. *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995). An officer's conduct must be judged "in light of common sense and ordinary human experience" and deference must be given to "an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (quotations omitted), *cert. denied*, 535 U.S. 1019 (2002). "Reasonable suspicion, however, may not be derived from inchoate suspicions and unparticularized hunches." *Id.*

Here, after the administration of the field sobriety test, Officer Ordonez observed Gross' vehicle contained a dealer plate. This led to Deputy Pirtle questioning Gross about the plate to determine if it was being used lawfully. This questioning and additional detention was unrelated to the purpose of the initial traffic stop - to apprehend inebriated drivers. Therefore, in order for this continued questioning and detention to pass constitutional muster, it must have been supported by a reasonable and articulable suspicion of criminal activity or

-18-

been consensual.

Because New Mexico limits the lawful use of dealer plates to certain circumstances, *see* N.M. STAT. ANN. § 66-8-2,[18] Officer Pirtle acted reasonably in questioning Gross concerning the plate on his vehicle. It was reasonable for Officer Pirtle to want to ensure that the use of the dealer plate was lawful. In response to Pirtle's question concerning the plate, Gross stated he owned a dealership and was road testing the vehicle. Deputy Pirtle found this suspicious because it was 10:45 p.m. on a Friday night. Upon approaching Gross' vehicle with his flashlight, Pirtle observed that it was littered with receipts leading him to become suspicious regarding the use of the vehicle, in particular, whether the vehicle was being used as a parts vehicle. Whether Gross told Pirtle he was using the vehicle as a parts vehicle is disputed, but there was no issue of fact concerning the time of day, Gross' consumption of alcohol (although within legal limits) or presence of receipts in the vehicle.[19] New Mexico law prohibits the use

---

[18] This statute provides in relevant part:

> No person . . . shall . . . display upon a vehicle any registration evidence, registration plate, validating sticker or permit not issued for such vehicle or not otherwise lawfully used thereon under the Motor Vehicle Code.

N.M. STAT. ANN. § 66-8-2.

[19] At his deposition, when asked whether there were "parts receipts all over the dash of the vehicle," Gross responded "I don't know." The colloquy continued:

> Q. You may have [had parts receipts in your vehicle]?

of a dealer plate on a parts vehicle.[20]

Pirtle attempted to issue a citation rather than arrest Gross. He specifically informed Gross the citation was not an admission of guilt and asked Gross to sign it. Gross did so by initialing it and writing "Under Protest." Although Gross claims he "signed" the citation as he does all of his legal documents, Deputy Pirtle apparently believed it was insufficient, as his "signature" did not match that on his drivers' license. This belief was reasonable. When Deputy Pirtle asked him to sign a second citation, which he could have done thereby avoiding further confrontation, Gross demanded to be taken before a magistrate judge. His demand resulted in the arrest.

The above facts demonstrate Gross' continued detention was lawful based

_____

A. I carry a folder with me. It's possible there was, but that's not a parts truck. It never was.

(App. Vol. III at 216.) Further, at Pirtle's deposition, he specifically recalled two of the receipts he observed in Gross' vehicle.

[20] Gross alleges the statute prohibiting the use of a dealer plate on a parts vehicle, N.M. STAT. ANN. 66-3-401(B), was not implemented by the New Mexico Department of Motor Vehicles until January 1999. However, the legislative history shows the statute became effective July 1, 1998, prior to the date of this incident. Additionally, Deputy Pirtle testified he "made it [his] duty to learn [the vehicle code] inside and out" and knew prior to the current incident that "it was unlawful for a dealer to drive his parts vehicle with a dealer's license plate. . . ." (App. Vol. III at 212.) Although Gross alleged below that Pirtle's knowledge of this statute was suspect because the codebook containing it was not published until August 1998, this mere allegation does not create a genuine issue of material fact concerning Pirtle's knowledge of the illegality of the use of a dealer plate on a parts vehicle. Nor do we find it relevant that Pirtle cited Gross under the more general statute, § 66-8-2, rather than § 66-3-401(B).

on Pirtle's reasonable suspicions concerning the use of the dealer plate. While Gross objects to being detained, the facts demonstrate Gross contributed to the length and rigor of the detention by arguing with Officer Pirtle concerning the motor vehicle laws. Additionally, it was Gross' conduct, in particular, his demand to be taken before a magistrate judge, which led to his arrest and could well be considered consent to any continued custody necessary to accommodate his demand. Deputy Pirtle merely attempted to issue Gross a citation, which Pirtle specifically informed him was not evidence of guilt.[21]

## Conclusion

We dismiss the appeal of Count III. We affirm the district court's grant of qualified immunity to Defendants.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge

---

[21] Under the same analysis, Gross cannot succeed on his New Mexico false imprisonment claim (Count IV), which he asserted below was legally tied to his Fourth Amendment unlawful arrest claim. Because Pirtle is not liable, the County cannot be vicariously liable for his actions under Count V.